UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| BARBARA ROSENBLATT, | |
| Plaintiff, | |
| v. | Civil Action No. 09-1469 (RLW-AK) |
| DISTRICT OF COLUMBIA, | |
| Defendant. | |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S
"STATEMENT OF UNDISPUTED MATERIAL FACTS"**

1 – 4.    Undisputed.

5.    Undisputed.

6.    Undisputed.  However, Defendant's practice was automatically grant tenure to probationary teachers on their two-year anniversary date.  Nyankori Dep. pp. 73, 93, 138; Johnson Dep. pp. 22, 39-49, 119-20, 122, 126.

7.    Undisputed.

8.    Undisputed that that "requirement" is stated in 5 DCMR § 1307.6, but disputed that such statutory language was followed by DCPS.  Its practice was to automatically grant tenure on the employee's two-year anniversary date.  Nyankori Dep. pp. 73, 93, 138; Johnson Dep. pp. 22, 39-49, 119-20, 122, 126.

9.    Undisputed.

10.    Undisputed.

11.    Undisputed.

12.    Undisputed.

13.    Undisputed.

14.     Undisputed.  However, the record shows that Ms. Rosenblatt functioned as a case manager for an early childhood assessment team and that the team, not Ms. Rosenblatt individually, identified, assessed and developed IEP's that were discussed with parents and their attorneys and presented to the early childhood unit's management team for approval.  Rosenblatt Dep. pp. 22, 24, 25-27, 28, 29, Rosenblatt Decl. ¶ 13; Johnson Dep. pp., 29-38.

15.     Undisputed.  However, Ms. Rosenblatt was supervised by Ms. Johnston-Stewart only from late March until June 2008, when the school year ended.  Johnston-Stewart Dep. pp. 10, 24, 33.

16.     Undisputed.

17.     Undisputed.

18.     Undisputed in part and disputed in part.  It is undisputed that an issue arose involving Ms. Rosenblatt while Dr. Nyankori was special assistant to Chancellor Michelle Rhee.  It is disputed that it arose over Ms. Rosenblatt's refusal to provide evaluation data performed by the Care Center to a parent or a parent's attorney prior to an eligibility meeting.  Ms. Rosenblatt was following long-established policy and Plaintiff strongly disputes any inference that she was acting inappropriately in doing so.  Johnson Dep. pp. 71, 76-85, Johnson Decl. ¶ ¶ 2, 4; Rosenblatt Dep. pp. 25, 34; Rosenblatt Decl. ¶¶6-9.

19.     Undisputed.

20.     Disputed. Dr. Nyankori directed Ms. Rosenblatt to send the assessments to the child's parents and attorneys and she complied with this directive, never refusing that order.  She never told Dr. Nyankori that it was against the law to furnish the assessments.

Rosenblatt Dep. p. 86; Rosenblatt Decl. ¶ 11.

21. Undisputed in part and disputed in part. It is undisputed that Dr. Nyankori directed that the assessments be released. It is disputed that Dr. Nyankori asked Plaintiff to produce the law saying that parents were not entitled to the information. Rosenblatt Decl. ¶ 6-10.

22. Undisputed. However, Ms. Johnston-Stewart became the supervisor in late March or early April. Johnston-Stewart Dep. pp. 10, 24, 33.

23. Undisputed.

24. Undisputed. However, Ms. Johnston-Stewart provided no specificity about those issues and testified that she never provided a written report about her findings, only one verbal conversation. Johnston-Stewart Dep. p. 29, 30-31. Ms. Johnson testified that, when she left, there were no backlogs and that the policy regarding interpretation meetings had reduced the number of due process hearings by 80%. Johnson Dep. p. 120; Johnson Decl. ¶ 8.

25. Undisputed. However, there is no record evidence that Plainitff's actions were the focus in the Blackman Jones case.

26. Undisputed. However, the record shows that Johnston-Stewart had no specific information about those "complaints" other than the cases involving Child C and the twins and she never counseled Ms. Rosenblatt or issued her a corrective counseling about those two cases or any other "complaints." Johnston-Stewart Dep. pp. 50, 51, 85; Rosenblatt Decl. ¶ 5.

27. Undisputed. However, the record shows that, at the time the parents or their attorneys requested the assessments, Ms. Rosenblatt was following early childhood unit

policy and would have been considered insubordinate by her then-supervisor, Ms. Johnson, had she released the assessments. Rosenblatt Dep. p. 34, Johnson Dep. p. 74; Johnson Decl. ¶ 4.

28. Undisputed in part and disputed in part. The last clause of this Paragraph is a legal conclusion and is disputed. The record shows that Ms. Rosenblatt sought advice about the early childhood unit's policy regarding the furnishing of assessments before interpretation meetings from Quinne Harris-Lindsey, the early childhood unit's Supervisory Attorney Advisor, Office of General Counsel, regarding the applicability of the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400, *et seq.* Based on Ms. Harris-Lindsey's interpretation of IDEA, Ms. Rosenblatt told Ms. McMahon (from Dr. Nyankori's office) that such disclosure was not mandated by IDEA and that DCPS was not obligated by IDEA to honor parents' requests for the assessments before the interpretation meeting. Rosenblatt Decl. ¶ 10.

29. Undisputed in part and disputed in part. There was no "incident" between Ms. Rosenblatt and Dr. Nyankori. She communicated her understanding of the early childhood unit's policy to Dr. Nyankori and followed his directive. Rosenblatt Dep. p. 86; Rosenblatt Dec. ¶¶ 6-11. Following the events of February 26th, Dr. Nyankori asked Ms. Johnston-Stewart to assess the situation with the early childhood staff but he did not, at that time, ask her to oversee that unit. Johnston-Stewart Dep. 26-29.

30. Undisputed. However, Ms. Johnston-Stewart became the supervisor in late March or early April. Johnston-Stewart Dep. pp. 10, 24, 33.

31. Undisputed.

32. Undisputed. However, Ms. Johnston-Stewart testified that the case "did not happen on her watch." Ms. Rosenblatt handled the twins case consistent with early childhood unit policy, completed the assessments in a timely and professional manner, sought guidance from her then-supervisor, Ms. Johnson, was not responsible for any delays in completing the IEP with the statutorily-prescribed period and had no control over the placements that were offered the twins. The IEP's for the twins were approved by the early childhood unit's management team. Johnston-Stewart Dep. p. 56, 85, 88-89, 98; Rosenblatt Dep. pp. 71-74, 78, Rosenblatt Decl. ¶ 11; Johnson Decl. ¶¶ 5-6.

33. Undisputed.

34. Undisputed. However, Ms. Johnston-Stewart admitted that she was unaware of whether Ms. Rosenblatt had spoken with Ms. Johnson or whether she was following Ms. Johnson's directives regarding the twins case. Johnston-Stewart Dep. p. 98.

35. Undisputed. However, Ms. Rosenblatt had sought assistance from Ms. Johnson. Rosenblatt Decl. ¶ 11; Johnson Decl. ¶¶ 5-6.

36. Undisputed.

37. Undisputed.

38. Disputed. At least two C.A.R.E. Center case managers were offered positions with Early Stages as family care coordinators. Ms. Rosenblatt was qualified for the family care or evaluation coordinator position. Rosenblatt Dep. pp. 41-45, 89.

39. Undisputed. However, of the five case managers, only Ms. Rosenblatt was not offered a position either with Early Stages or elsewhere in the DCPS system. Rosenblatt Dep. pp. 41-45.

5

40. Disputed. Under DCPS practices, As a permanent teacher, application of the policy for non-retention of probationary teachers was not applicable to Ms. Rosenblatt. She vested automatically as a permanent employee upon her two-year service anniversary. Nyankori Dep. pp. 73, 93, 138; Johnson Dep. pp. 22, 39-49, 119-20, 122, 126.

41. Undisputed.

42. Undisputed.

43. Undisputed in part and disputed in part. Ms. Rosenblatt admits that the form contains a narrative purportedly completed by Ms. Harris. However, she disputes that such "narrative" is supported by any record evidence. Ms. Harris never met Ms. Rosenblatt. Nor had she observed Ms. Rosenblatt performing her job. Ms. Rosenblatt was an outstanding employee. She never had been counseled or issued a corrective action form regarding her job performance or the Child C or twins cases. None of the matters recounted in that "narrative," other than the February 26, 2008 event, ever were even discussed with Ms. Rosenblatt. Ms. Johnson, Ms. Rosenblatt's supervisor from May 2006 through February 2008, never observed any of the deficiencies cited in the "narrative," nor discussed them with Ms. Harris. Ms. Johnston-Stewart, during her short tenure as Ms. Rosenblatt's immediate supervisor, ever discussed the issues cited in the "narrative" with Ms. Rosenblatt. Rosenblatt Dep. p. 12; Rosenblatt Decl. ¶¶5, 17, 18; Johnston-Stewart Dep. pp. 50, 51, 85; Johnson Dep. pp. 65, 69-70, 70-75, Johnson Decl. ¶ 7.

44. Undisputed.

45. Undisputed.

46. Undisputed. However, this response was counter to DCPS's practice that probationary teachers automatically vested on their two-year anniversary date. Further, the assertion that Ms. Rosenblatt's termination was "based on DCPS's assessment of your performance while on probation," was counter to Ms. Rosenblatt's actual job performance as an outstanding performer. Nyankori Dep. pp. 73, 93, 138; Johnson Dep. pp. 22, 39-49, 119-20, 122, 126; Rosenblatt Decl. ¶¶5, 17, 18; Johnston-Stewart Dep. pp. 50, 51, 85; Johnson Dep. pp. 65, 69-70, 70-75, Johnson Decl. ¶ 7..

47. Disputed. Based on the documentation brought up in the litigation and deposition testimony, Ms. Rosenblatt believes that somebody, including Dr. Nyankori, Ms. Harris and Ms. Johnston-Stewart and others discriminated against her. Rosenblatt Dep. p. 80.

48. Undisputed. However, while she was employed by DCPS, Ms. Rosenblatt understood that she was considered an outstanding employee. Rosenblatt Decl. ¶¶5, 17, 18; Johnson Dep. pp. 22, 39-49, 59, 65, 69-70, 70-75, 119-20, 122, 129; Johnson Decl. ¶ 7.

49. Disputed. The reasons articulated by DCPS for her termination are shifting, inconsistent with its own policies and procedures and are false. They are a pretext for the real reason for her termination, unlawful discrimination against Ms. Rosenblatt because of her age and race.

50. Undisputed. However, Ms. Bell was offered a position with Early Stages. Rosenblatt Dep. pp. 41-45.

51. Disputed. At the time of her termination, Ms. Rosenblatt was similarly situated to those other case managers because she, like them, was a tenured teacher. Nyankori Dep. pp. 73, 93, 138; Johnson Dep. pp. 22, 39-49, 119-20, 122, 126.

52.     Undisputed.  However, Defendant has not offered any evidence other than the Child C, the twins case and Ms. Harris' narrative to support Ms. Rosenblatt's termination.  Defendant never counseled or disciplined Ms. Rosenblatt for any of these matters and she was considered an outstanding teacher that became tenured on May 15, 2008.  Rosenblatt Decl. ¶¶5, 17, 18; Johnson Dep. pp. 22, 39-49,65, 69-70, 70-75, 119-20, 122, 126, Johnson Decl. ¶ 7; Nyankori Dep. pp. 73, 93, 138.

53.     Disputed.  The reasons articulated by DCPS for her termination are shifting, inconsistent with its own policies and procedures and are false.  They are a pretext for the real reason for her termination, unlawful discrimination against Ms. Rosenblatt because of her age and race.

54.     Undisputed.

55.     Undisputed.

56 - 57.     Disputed.  The injury to Ms. Rosenblatt occurred on August 1, 2008, when the proposed termination became effective.  Further, that letter sought liquidated damages from DCPS.  It also apprised the Mayor of the District of Columbia of the time, place, cause and circumstances of the injury.

DATED:  January 9, 2012     Respectfully submitted,

_____
Nathaniel D. Johnson  (MD#14729)
Attorney for Plaintiff
The Law Firm of Nathaniel D. Johnson, LLC
3195 Old Washington Road
Waldorf, Maryland  20602
(301) 645-9103

**CERTIFICATE OF SERVICE**

I, Nathaniel D. Johnson, affirm under penalty of perjury that, on this date, January 9, 2012, Plaintiff's Response to Defendant's "Statement of Undisputed Material Facts was sent to the undersigned Defendant's counsel, via electronic and first class United States mail, postage prepaid, the following addressee:

Wayne Beyer, Esq.
Assistant Attorney General
441 Fourth Street, N.W.
6th Floor, South
Washington, D.C. 20001

Attorney for Defendant

/S/
_____
Nathaniel D. Johnson
Attorney for Plaintiff