SUMMARY OPINION AND ORDER; NOT INTENDED FOR PUBLICATION
IN THE OFFICIAL REPORTERS

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

**BARBARA ROSENBLATT**,

    Plaintiff,

    v.

**DISTRICT OF COLUMBIA**,

    Defendant.

Civil Action No. 09-cv-1469 (RLW)

## MEMORANDUM OPINION[1]

Plaintiff Barbara Rosenblatt ("Plaintiff"), a Caucasian female who was 61 years old at the time of her discharge from the District of Columbia Public Schools ("DCPS"), brings this lawsuit against the District of Columbia (the "District") asserting claims arising from her termination from DCPS in August 2008.  This matter is before the Court on the District's Motion for Summary Judgment (Dkt. 61).  Through her Third Amended Complaint (Dkt. 50),[2] Plaintiff pursues three remaining counts against the District: (1) Count I: Racial Discrimination Under the D.C. Human Rights Act ("DCHRA"); (2) Count II: Racial Discrimination Based Upon "Mixed-Motive" Under the DCHRA; and (3) Count III: Age Discrimination Under the DCHRA and the

---

[1]     This unpublished memorandum opinion is intended solely to inform the parties and any reviewing court of the basis for the instant ruling, or, alternatively, to assist in any potential future analysis of the *res judicata*, law of the case, or preclusive effect of the ruling.  The Court has designated this opinion as "not intended for publication," but this Court cannot prevent or prohibit the publication of this opinion in the various and sundry electronic and legal databases (as it is a public document), and this Court cannot prevent or prohibit the citation of this opinion by counsel.  *Cf.* FED. R. APP. P. 32.1.  Nonetheless, as stated in the operational handbook adopted by our Court of Appeals, "counsel are reminded that the Court's decision to issue an unpublished disposition means that the Court sees no precedential value in that disposition."  D.C. CIRCUIT HANDBOOK OF PRACTICE AND INTERNAL PROCEDURES 43 (2011).

[2]     Although styled as a "Third Amended Complaint," the pleading appearing at docket entry 50 is actually the fourth amended complaint that Plaintiff has filed in this case.  To avoid confusion, the Court's references to the "Third Amended Complaint" in this opinion should be understood to mean the operative complaint filed at docket entry 50.

Age Discrimination in Employment Act ("ADEA"). In connection with her claims, Plaintiff seeks $500,000 in compensatory damages against the District, interest, costs and expenses, and reasonable attorneys' fees.

For the following reasons, the District's Motion is **GRANTED**. For purposes of this ruling, the Court will assume that the reader is familiar with the factual assertions and arguments made by the parties and will not recite those again here.

## ANALYSIS

### A. Standard of Review

Summary judgment is appropriate when the moving party demonstrates that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Moore v. Hartman*, 571 F.3d 62, 66 (D.C. Cir. 2009). A genuine issue of material fact exists if the evidence "is such that a reasonable jury could return a verdict for the nonmoving party." *Steele v. Schafer*, 535 F.3d 689, 692 (D.C. Cir. 2008) (quoting *Anderson*, 477 U.S. at 248). While the Court views all facts in the light most favorable to the nonmoving party in reaching that determination, *Keyes v. Dist. of Columbia*, 372 F.3d 434, 436 (D.C. Cir. 2002), the nonmoving party must nevertheless provide more than "a scintilla of evidence" in support of its position. *Anderson*, 477 U.S. at 252. To establish a genuine issue of material fact, the nonmoving party must demonstrate—through affidavits or other competent evidence, FED. R. CIV. P. 56(c)(1)—that the quantum of evidence is such that a "jury could reasonably find for the [nonmoving party]." *Anderson*, 477 U.S. at 252.

### B. Count III: Age Discrimination

#### 1. Plaintiff's Age Discrimination Claim Under The ADEA.

Insofar as both the District and Plaintiff devote the bulk of their briefing to Plaintiff's claim for age discrimination under the ADEA, the Court considers this claim first.

The ADEA makes it unlawful for an employer to terminate or otherwise discriminate against an individual "because of such individual's age." 29 U.S.C. § 623(a)(1). Absent direct evidence of discrimination, ADEA claims are evaluated pursuant to the three-part burden-shifting framework laid out by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See, e.g.*, *Barnette v. Chertoff*, 453 F.3d 513, 515 (D.C. Cir. 2006). First, an ADEA plaintiff bears the initial burden of establishing, by a preponderance of the evidence, a *prima facie* case of discrimination by showing: (1) she is a member of a protected class; (2) she suffered an adverse employment action; and (3) the unfavorable action gives rise to an inference of discrimination. *Id.* (quoting *Brown v. Brody*, 199 F.3d 446, 452 (D.C. Cir. 1999)). Second, once the plaintiff establishes a *prima facie* case, the burden shifts to the employer to articulate a "legitimate, non-discriminatory reason" for the challenged employment action. *McDonnell Douglas*, 411 U.S. at 802-04; *Wiley v. Glassman*, 511 F.3d 151, 155 (D.C. Cir. 2007). Finally, the plaintiff "must be afforded the opportunity to prove" that the employer's proffered motive "was not its true reason, but was a pretext for discrimination." *Barnette*, 453 F.3d at 516 (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000)).

At the summary judgment stage, however, the D.C. Circuit has instructed that, once an employer provides a legitimate, non-discriminatory basis for its decision, "the district court need not—*and should not*—decide whether the plaintiff actually made out a prima facie case under *McDonnell Douglas*." *Brady v. Office of Sergeant at Arms*, 520 F.3d 490, 494 (D.C. Cir. 2008)

(emphasis in original). Rather, the single question for the Court to resolve at summary judgment becomes whether "the employee produced sufficient evidence for a reasonable jury to find that the employer's asserted non-discriminatory reason was not the actual reason and that the employer intentionally discriminated against the employee on the basis of [age]." *Id.*; *see also Hampton v. Vilsack*, 685 F.3d 1096, 1100 (D.C. Cir. 2012). In answering this question, "sufficient evidence" may include the plaintiff's "prima facie case, the plaintiff's challenge to the employer's proffered justification, and any other evidence of discrimination." *Hampton*, 685 F.3d at 1100; *Royall v. Nat'l Ass'n of Letter Carriers*, 548 F.3d 137, 144 (D.C. Cir. 2008).

Notably, in contrast to cases under Title VII, an ADEA plaintiff cannot proceed on an alternative "mixed motive" theory. Rather, the Supreme Court has held that an ADEA plaintiff can only establish liability if he or she proves, "by a preponderance of the evidence, that age was the 'but-for' case of the challenged adverse employment action." *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 180 (2009); *see also Breeden v. Novartis Pharm. Corp.*, 646 F.3d 43, 49 n.3 (D.C. Cir. 2011).

In seeking dismissal of Plaintiff's ADEA claim, the District first argues that Plaintiff is unable to establish a *prima facie* case of age discrimination. The Court need not consider this argument, however, because the District provided a "legitimate, non-discriminatory" basis for its decision to terminate Plaintiff's employment with DCPS—namely, its negative evaluation of Plaintiff's performance during her two-year probationary period. Thus, pursuant to the guidance from our Circuit, the Court proceeds directly to the ultimate question underlying Plaintiff's discrimination claim: whether Plaintiff adduced sufficient evidence to enable a reasonable jury to conclude that the District's proffered reason for her termination is pretextual and that the real motivation was discrimination based on her age. The Court concludes she has not.

To show pretext, a plaintiff may offer evidence that similarly situated employees outside the protected class were treated "more favorably in the same factual circumstances," or "[a]lternatively, the employee may attempt to demonstrate that the employer is making up or lying about the underlying facts that formed the predicate for the employment decision." *Brady*, 520 F.3d at 495; *see also Royall*, 548 F.3d at 144. In assailing the District's proffered explanation for its decision, Plaintiff relies on both of these approaches.

First, and principally, Plaintiff attempts to demonstrate that the District's articulated reasons for terminating her employment are "not credible" and "demonstrably untrue." (Dkt. 64, at 24). As the District correctly points out, however, this Court does not sit as a "super-personnel department" that reexamines an employer's business decisions. *Barbour v. Browner*, 181 F.3d 1342, 1346 (D.C. Cir. 1999). Rather, where an "employer's stated belief about the underlying facts is reasonable in light of the evidence . . . there is ordinarily no basis for permitting a jury to conclude that the employer is lying about the underlying facts." *Brady*, 520 F.3d at 495; *see also George v. Levitt*, 407 F.3d 405, 415 (D.C. Cir. 2005) ("[A]n employer's action may be justified by a reasonable belief in the validity of the reason given even though that reason may turn out to be false."); *Fischbach v. D.C. Dep't of Corr.*, 86 F.3d 1180, 1183 (D.C. Cir. 1996). Here, while the Court agrees that the District certainly could have presented more evidence to bolster its explanation for discharging Plaintiff, the undisputed facts nevertheless establish that the District's termination decision was based on reasonable, valid grounds, and not Plaintiff's age.

In deciding not to renew Plaintiff's teaching contract for the 2008-2009 school year, Plaintiff's Principal, Phyllis Harris, summarized the basis for the District's decision as follows:

> Ms. Rosenbaltt [sic] does not consistently demonstrate the ability to resolve conflicts with parents and advocates in IEP meetings which have lead [sic] to several due process hearings. She has refused on several occasions to comply with request [sic] from the Office of Special Education Reform including Dr.

> Richard Nyankori. She is inconsistent in carrying out responsibilities to a successful conclusion. Ms. Rosenblatt is unable to adapt to change in deadlines and changes in the nature of sasignments [sic] leading to incomplete cases and overdue IEPs.

(Dkt. 61-1, at 6 ¶ 43, Ex. 7). More specifically, the District presented evidence through this motion as to two particular issues that, in the District's view, are emblematic of its general concerns with Plaintiff's performance.

First, the District highlighted an occurrence surrounding Plaintiff's response when a student's parents requested a copy of an individualized education program ("IEP") assessment for their student. After Plaintiff initially declined the parents' request—albeit apparently relying on a prior supervisor's policy not to release such reports until the District could hold a face-to-face meeting with the parents—the issue was escalated to the Chancellor's office, and Plaintiff was directed to release a copy of the report. (Dkt. 61-1, at 3-4 ¶¶ 18-19, 27). But Plaintiff did not immediately do so; instead, she advised Dr. Richard Nyankori, Special Assistant to the Chancellor, that the law "does not mandate the school district to turn over evaluations before an [in-person] meeting. The parent may request copies of the evaluations, but the school district is not obligated to honor the request." (Dkt. 61-1, at 3 ¶¶ 18-20; Dkt. 61-9, Ex. 7). Dr. Nyankori then directed Plaintiff that "[i]f a parent or a parent representative requests the evaluation at any time after it is completed it must be given." (Dkt. 61-1, at 3 ¶¶ 18-20; Dkt. 61-10, Ex. 8). It appears that Plaintiff then released the report, although the record is not entirely clear on this point. The District took issue with Plaintiff's approach, which apparently made Dr. Nyankori "very upset." (Dkt. 61-1, at 4 ¶ 28). While Plaintiff disputes the District's <u>characterization</u> of her exchange with Dr. Nyankori—*i.e.*, that she "refused" to provide the assessment to the student's parents—the <u>facts</u> surrounding that exchange are undisputed (*see* Dkt. 61-1, at 3 ¶¶ 18-

21), and those facts credibly support the District's belief that Plaintiff's behavior under the circumstances was insubordinate and inappropriate.

Second, the District points to Plaintiff's handling of a particular IEP assessment case involving two twin students. The District asserts, and Plaintiff does not dispute, that the students' parents complained about delays in the evaluation process and about the educational placements offered to their children, which resulted in the commencement of a due process hearing against the District. (Dkt. 61-1, at 4-5 ¶¶ 31-35). In the District's eyes, Plaintiff should have handled the case more effectively or sought help during the process—a belief the District developed in light of issues and miscommunications that came to light as part of the due process hearing. (*Id.*). For her part, Plaintiff denies any responsibility for delays in the IEP process or the ultimate placements offered to the students, but this argument misses the point. The relevant factual issue is not whether Plaintiff actually mishandled the particular case, but whether the District "honestly and reasonably believed" that she did. *Brady*, 520 F.3d at 496 (affirming summary judgment on discrimination claim because, although employee denied the occurrence of a particular incident, he failed to show that the employer's conclusion was "dishonest or unreasonable"). The evidence before the Court demonstrates that the District's belief in this regard was not "dishonest or unreasonable." *Id.*

These particular incidents are fully consistent with and supportive of the District's overall justification for Plaintiff's discharge, as set forth in the District's narrative statement recommending her non-renewal. Accordingly, Plaintiff has failed to raise a genuine issue of material fact showing that the District is "making up or lying about" its justification for Plaintiff's termination. *Id.*

Plaintiff also attempts to establish pretext by claiming that at least one other similarly situated employee outside her protected class—*i.e.,* a younger employee—was treated more favorably. Around the time Plaintiff's employment was terminated, DCPS reorganized its special education program, resulting in the closure of the Shaw Care Center where Plaintiff previously worked and the opening of a new program entitled "Early Stages." (Dkt. 61-1, at 5 ¶¶ 36-37). Prior to this transition, there were four other teachers who, like Plaintiff, were also case managers for DCPS: Kathie Thompson, who was in her late 50s and African-American; Sheila Scott-Bates, who was approximately 60 or 61 years old and African-American; Michael Ellis, who was approximately 57 years old and Caucasian; and Kristen Bell, who was about 30 years old and Caucasian. (*Id.*, at 7 ¶ 50). Other than Plaintiff, all four of these case managers were offered positions when the Shaw Care Center closed, either in the new "Early Stages" program or elsewhere with the DCPS system. (*Id.*).

To this end, Plaintiff claims that she was "disadvantaged in favor of a younger employee" when she was discharged because Ms. Bell, who was "half Plaintiff's age (30 years old)," was offered a position in DCPS's new "Early Stages" program, while Plaintiff was not. (Dkt. 64, at 22). What Plaintiff's argument ignores, however, is that, setting aside Ms. Bell, all of the other case managers retained by the District were in the same protected category as Plaintiff. In fact, above and beyond being at least 40 years of age, 29 U.S.C. § 631(a), Ms. Thompson, Ms. Scott-Bates, and Mr. Ellis were all in their late 50s or early 60s—essentially the same age as Plaintiff at the time of her termination. (Dkt. 61-1, at 7 ¶ 50). Thus, any traction Plaintiff hoped to gain from the District's job offer to the younger Ms. Bell is entirely undermined by the fact that every other case manager from Plaintiff's former Care Center over the age of 40 remained employed

with the District.³ *See Murray v. Gilmore*, 406 F.3d 708, 748 (D.C. Cir. 2005) ("[A] replacement within the same protected class cuts strongly against any inference of discrimination."); *Brown v. Brody*, 199 F.3d 446, 451 (D.C. Cir. 1999) (explaining that sex discrimination claim challenging the denial of a transfer "would be baseless because two of the three employees selected for that transfer were women.").

Finally, Plaintiff suggests that the Court should infer ageist animus against the District based a comment she attributes to her supervisor, around the time of the reorganization of DCPS's special education program, that any new position with the "Early Stages" program would involve "a lot of running around, way more than you're used to." (Dkt. 64, at 17, 32 n.6). However, the Court finds that this ambiguous remark does not suggest discrimination based on age. *Gold v. Gensler*, 840 F. Supp. 2d 58, 69 (D.D.C. 2012) (finding "nothing inherently ageist" about comment that another candidate would bring "fresh perspective and new energy" to a position); *EEOC v. D.C. Pub. Schs.*, 277 F. Supp. 2d 44, 53 n.9 (D.D.C. 2003) (finding comment regarding a "high energy classroom" did not support an inference that the plaintiff's termination was age-related).⁴

In sum, given that the undisputed material facts in the record support the District's proffered non-discriminatory reasons for its actions, and given Plaintiff's failure to identify or

---

³ The District also argues that Plaintiff is not similarly situated to these individuals in the first place because they were tenured teachers, while Plaintiff, on the other hand, was a non-tenured, probationary employee at the time of her discharge. While this distinction could serve as a valid basis to find that Plaintiff was not similarly situated, *see Royall v. Nat'l Ass'n of Letter Carriers*, 548 F.3d at 145, given Plaintiff's inability to show pretext through her comparison to other case managers in any event, the Court need not and does not reach this issue.

⁴ The same is true as to Plaintiff's argument that the District's statement that she has an "inability to adapt to change" is a "stereotypical criticism of older workers." (Dkt. 64, at 31 n.6). There is nothing inherently ageist about this vague critique.

introduce any evidence suggesting that these reasons were pretextual and/or that the District discriminated against her because of her age, the District is entitled to summary judgment.

### 2. Plaintiff's Age Discrimination Claim Under The DCHRA.

In relevant part, the DCHRA makes it unlawful for an employer to, *inter alia*, "discharge[] any individual" based upon the individual's "age" or "race."  D.C. Code § 2-1402.11.  District of Columbia courts evaluate age discrimination claims under the DCHRA pursuant to the same three-part *McDonnell Douglas* framework.  *Gaujacq v. EDF, Inc.*, 601 F.3d 565, 576 (D.C. Cir. 2010), and under existing D.C. precedent, an age discrimination plaintiff must show that his or her age "'had a determinative influence on' the challenged employment action."  *Schuler v. PricewaterhouseCoopers, LLP*, 595 F.3d 370, 376 (D.C. Cir. 2010) (quoting *Wash. Convention Ctr. Auth. v. Johnson*, 953 A.2d 1064, 1073 n.7 (D.C. 2008)).  The District urges the Court to find that the "but for" causation standard governing ADEA claims, *Gross*, 557 U.S. at 180, equally applies to Plaintiff's age claim under the DCHRA.  The parties cite to no authority on this issue, however, and since *Gross* was handed down, the Court is not aware of any decision issued by the D.C. Court of Appeals or the D.C. Circuit addressing this question. And based on the record in this case, assuming there even is a meaningful difference between these standards as articulated, the Court concludes that it need not resolve this question either.  In view of the Court's analysis as to Plaintiff's ADEA claim above, no reasonably jury could conclude that Plaintiff's age "had a determinative influence on" her discharge from DCPS or was the "but-for" cause of that decision.  Accordingly, the District is entitled to summary judgment.

### C. Counts I and II: Racial Discrimination Under the DCHRA[5]

Plaintiff's race discrimination claims under the DCHRA are also examined under the three-part *McDonnell Douglas* burden-shifting approach. *Gaujacq*, 601 F.3d at 576. Given that the District advances a legitimate, non-discriminatory reason for Plaintiff's termination—as outlined above—the Court need not decide whether Plaintiff properly articulated a *prima facie* case of race discrimination. *Brady*, 520 F.3d at 494. Instead, the Court proceeds directly to the ultimate question underlying her claim: whether Plaintiff adduces sufficient evidence for a reasonable jury to conclude that the District's justification for its discharge decision is false and that the District intentionally discriminated against Plaintiff because she is Caucasian. *Id.*; *Hampton*, 685 F.3d at 1100. Plaintiff fails to meet this burden.

In attacking the District's proffered explanation, Plaintiff essentially incorporates the same arguments she advanced in support of her ADEA claim. Thus, to the extent Plaintiff attacks the District's reasons for her termination as untrue or made up, the Court is not persuaded by these arguments for the reasons set forth above. Otherwise, Plaintiff asks the Court to conclude that the District's reasons are pretextual because similarly-situated African-American colleagues were retained by DCPS, while she was not. As before, however, Plaintiff seems to be making this argument while wearing blinders. While it is true that both African-American case managers from the Shaw Care Center—Ms. Thompson and Ms. Scott-Bates—were offered placements elsewhere in DCPS, so too were both of the other Caucasian case managers—Mr. Ellis and Ms. Bell. (Dkt. 61-1, at 7 ¶ 50). As a result, even assuming that all four of these other individuals were similarly situated to Plaintiff, as she argues, these circumstances fail to establish

---

[5] As pled in her Third Amended Complaint, Plaintiff also invokes "1981" as a legal basis for her race discrimination counts. However, Judge Roberts previously dismissed Plaintiff's Section 1981 claim(s) from this case before it was reassigned to the undersigned. (*See* Dkt. 31). Thus, the DCHRA is the sole remaining legal basis for Plaintiff's race discrimination claim(s).

that her Caucasian race "had a determinative influence on" her discharge. *Murray*, 406 F.3d at 748; *Brown*, 199 F.3d at 451.

Finally, Plaintiff separately seeks to proceed with her DCHRA racial discrimination claim under a "mixed motive" analysis, under which Plaintiff could prevail by establishing that the District's decision was motivated "partially" by racist animus, even if the decision was also based on other non-pretextual reasons. *See Furline v. Morrison*, 953 A.2d 344, 353 (D.C. 2008). Because the Court concludes that Plaintiff has not offered any evidence to demonstrate that race was even a motivating factor in the District's decision, there is no basis for Plaintiff to proceed on a "mixed motive" theory.[6]

Accordingly, the District is entitled to summary judgment on Plaintiff's claim(s) of racial discrimination under the DCHRA.

## CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment is granted. An order accompanies this Memorandum Opinion.

Date: October 11, 2012

---------------------------------------
ROBERT L. WILKINS
United States District Judge

---

[6] Stated differently, in order to even trigger a "mixed motive" analysis—which essentially provides employers with a limited affirmative defense to establish that it would have taken the challenged action for permissible reasons alone, even if discriminatory animus partially motivated the decision—a plaintiff must establish that improper discrimination was at least a motivating factor for the challenged action in the first place. *Furline*, 953 A.2d at 353 n.28 (characterizing a mixed motive analysis as an "affirmative defense under the DCHRA"). Plaintiff has made no such showing here, rendering this alternative analysis unnecessary.